UNITED STATES COURT OF INTERNATIONAL TRADE
NEW YORK, NEW YORK

BEFORE: UNASSIGNED

|  |  |
|---|---|
| JOINT STOCK COMPANY APATIT, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 23- 00254 |
| UNITED STATES, | ) |
| Defendant. | ) |

# COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiff Joint Stock Company Apatit ("JSC Apatit") brings this Complaint against the United States of America, by and through undersigned counsel, and alleges and states as follows:

## PARTIES

1. Plaintiff JSC Apatit is a foreign producer and exporter of phosphate fertilizers from Russia. JSC Apatit is headquartered in Cherepovets, Russia.

2. Defendant United States of America is the Federal Government of the United States of America.

## DETERMINATION TO BE REVIEWED

3. JSC Apatit contests certain aspects of the final results issued by the U.S. Department of Commerce, International Trade Administration ("Commerce"), in its countervailing duty ("CVD") administrative review of Phosphate Fertilizers from Russia, Case No. C-821-835. The CVD final results were published as *Phosphate Fertilizers from the Russian Federation: Final Results of Countervailing Duty Administrative Review; 2020-2021*,

88 Fed. Reg. 76,182 (Dep't Commerce Nov. 6, 2023) ("*Final Results*").  This appeal also contests certain aspects of Commerce's accompanying Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Phosphate Fertilizers from the Russian Federation; 2020-2021, dated October 31, 2023 ("*Final Decision Memo*") and the Final Determination Calculations for Joint Stock Company Apatit, dated October 31, 2023 ("*Final Calculations Memo*").  The period of review ("POR") was November 30, 2020, through December 31, 2021.

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).  That section confers exclusive jurisdiction on the U.S. Court of International Trade to review CVD final administrative review determinations issued by Commerce under Sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930 (the "Act"), *as amended*, 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), (B)(iii).

## STANDING OF PLAINTIFF

5. JSC Apatit participated in the CVD investigation that is the subject of this action and was selected as a mandatory respondent by Commerce.

## TIMELINESS OF THIS ACTION

6. Commerce published the *Final Results* in the *Federal Register* on November 6, 2023.  On December 4, 2023, JSC Apatit filed a Summons with this Court, timely commencing this action within thirty (30) days after *Federal Register* publication of the *Final Results*.  On January 3, 2024, within thirty (30) days thereafter, JSC Apatit filed this Complaint.  Therefore, this action is timely brought in accordance with Section 516A(a)(2)(A)(i) of the Tariff

Act of 1930, 19 U.S.C. § 1516a(a)(2)(A)(i), 28 U.S.C. § 2636(c), and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## STANDARD OF REVIEW

7.   This Court reviews final determinations issued by Commerce pursuant to 19 U.S.C. § 1675(a) to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## STATEMENT OF FACTS

8.   Commerce published a CVD order on phosphate fertilizers from Russia in the Federal Register on April 7, 2021. *Phosphate Fertilizers from the Kingdom of Morocco and the Russian Federation: Countervailing Duty Orders*, 86 Fed. Reg. 18,037 (Dep't Commerce Apr. 7, 2021) ("CVD Order"). On April 1, 2022, Commerce published a notice of opportunity to request an administrative review of the CVD Order. On April 29, 2022, JSC Apatit and Industrial Group Phosphorite LLC ("Phosphorite") timely submitted a request for administrative review. Memorandum from James Maeder to Lisa Wang, *Issues and Decision Memorandum for the Preliminary Results and Partial Rescission of the Countervailing Duty Administrative Review; 2020-2021: Phosphate Fertilizers from the Russian Federation*, Case No. C-821-825 (2020-21 Administrative Review) (Apr. 27, 2023) at 1-2 ("*Preliminary Decision Memo*"). On May 2, 2022, the Mosaic Company (the "Petitioner" or "Mosaic") timely filed a request for a review of the Order for JSC Apatit and Phosphorite. *Id* at 2. Commerce then initiated the CVD investigation on June 9, 2022. *Initiation of Antidumping and Countervailing Duty Investigations*, 87 Fed. Reg. 35,165 (Dep't Commerce June 9, 2022).

9.   On July 20, 2022, Commerce selected JSC Apatit as a mandatory respondent and issued a CVD questionnaire to the Government of Russia ("GOR"), which was forwarded to

3

JSC Apatit.  Letter from Rebecca Trainor to Anastasia Zimonina, *Countervailing Duty Administrative Review of Phosphate Fertilizers from the Russian Federation: Countervailing Duty Questionnaire*, Case No. C-821-825 (2020-21 Administrative Review) (Jul. 20, 2022).  On July 22, 2022, Commerce notified all interested parties of its intent to rescind this review with respect to Phosphorite.  *Preliminary Decision Memo* at 2.

10. JSC Apatit timely submitted responses to Commerce's initial CVD questionnaire and supplemental questionnaires from August 28, 2022 to April 10, 2023.  *Preliminary Decision Memo* at 2.

11. On November 30, 2022, in accordance with section 751(a)(3)(A) of the Tariff Act of 1930 and 19 C.F.R. § 351.213(h)(2), Commerce postponed the preliminary results of the review until March 28, 2023.  *Id.* at 2.

12. Both the Petitioner and JSC Apatit timely provided benchmark data to Commerce on March 15, 2023.  Letter from Hogan Lovells US LLP to the U.S. Department of Commerce, *Phosphate Fertilizers from Russia: JSC Apatit's Benchmark Data Submission*, Case No. C-821-825 (2020-2021 Administrative Review) (Mar. 15, 2023) ("JSC Apatit's Benchmark Submission"); Letter from WilmerHale to U.S. Department of Commerce, *Phosphate Fertilizers from the Russian Federation: Petitioner's Submission of Factual Information to measure the Adequacy of Remuneration*, Case No. C-821-825 (2020-2021 Administrative Review) (Mar. 15, 2023) ("Petitioner's Benchmark Submission").

13. In regards to the alleged natural gas program, JSC Apatit provided ownership information demonstrating that certain suppliers of natural gas to JSC Apatit are privately owned (i.e., not owned or controlled by the GOR), and that any purchases from these "independent gas suppliers" should be excluded from Commerce's calculations.  Response from Hogan Lovells US

4

LLP to the U.S. Department of Commerce, *Countervailing Duty Administrative Review on Phosphate Fertilizers from Russia: JSC Apatit, Section III of Initial Questionnaire Response*, Case No. C-821-825 (2020-21 Administrative Review) (Sept. 23, 2022) at Exh. 24.

14. JSC Apatit also provided mining rights benchmark data comprising phosphate rock pricing information from EuroStat and the International Fertilizer Association ("IFA"). JSC Apatit's Benchmark Submission at Appendices 8-9. Petitioner provided benchmark data for the mining rights program comprising IHS Markit's Global Trade Atlas ("GTA") and UN Comtrade export data for phosphate rock from Brazil, Finland, and South Africa. JSC Apatit also provided phosphate rock export data reported by Global Trade Tracker ("GTT") for Brazil, Finland, and South Africa. JSC Apatit's Benchmark Rebuttal Submission at Appendices 13-15. Petitioner provided benchmark data for the mining rights program comprising IHS Markit's Global Trade Atlas ("GTA") and UN Comtrade export data for phosphate rock from Brazil, Finland, and South Africa. Petitioner's Benchmark Submission at Exhs. 4-6. Petitioner also included additional benchmark data pertaining to Togo (UN Comtrade) and Iran (GTA database). *See* Brief of The Archer Daniels Midland Company, *Countervailing Duty Administrative Review on Phosphate Fertilizers from the Russian Federation*, Case No. C-821-825 (2020-21 Administrative Review) (June 12, 2023) at 16-18 (citing Petitioner's Benchmark Submission at Exh. 6).

15. On May 4, 2023, Commerce published in the *Federal Register* the Preliminary Results and assigned a preliminary CVD rate of 53.29% to JSC Apatit. *Phosphate Fertilizers from the Russian Federation: Preliminary Results and Partial Recission of the Countervailing Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 28,505 (Dep't Commerce May 4, 2023) ("*Preliminary Results*"). Most importantly for purposes of this appeal, Commerce calculated its benchmark for the alleged mining rights from the GOR for LTAR program by taking the simple

5

average of the unrepresentative and duplicative data for South Africa, Brazil, and Finland from GTA and data for South Africa and Brazil from UN Comtrade as a "tier three" benchmark under 19 C.F.R. § 351.511(a)(2)(iii). Additionally, Commerce determined that certain natural gas suppliers to JSC Apatit are "government authorities," in accordance with 19 U.S.C. § 1677(5)(B), on the basis of adverse facts available ("AFA") due to the GOR's failure to respond fully to Commerce's input producer appendices. Consequentially, Commerce countervailed all of JSC Apatit's natural gas purchases.

16. On May 16, 2023, JSC Apatit filed a letter to Commerce in response to the *Preliminary Results*, explaining the material errors in Commerce's preliminary calculations, its unlawful disregard of additional benchmark data on the record, and the subsequent inconsistent results with the original investigation in this proceeding and the parallel *Phosphate Fertilizers from Morocco* case. Letter from Hogan Lovells US LLP to U.S. Department of Commerce, *Phosphate Fertilizers from Russia: JSC Apatit's Response to Preliminary Results and Request for Meeting*, Case No. 8-21-825 (2020-21 Administrative Review) (May 16, 2023).

17. On June 5, 2023, JSC Apatit's counsel met virtually with Commerce officials to discuss the material errors in Commerce's calculation of the mining rights benchmark in the *Preliminary Results*. Memorandum from Shane Subler to The File, *Countervailing Duty Administrative Review of Phosphate Fertilizers from the Russian Federation: Meeting with Respondent's Counsel*, Case No. C-821-825 (2020-21 Administrative Review) (June 5, 2023).

18. On June 12, 2023, JSC Apatit, Mosaic, and Archer Daniels Midland Company ("ADM") timely filed case briefs. *Final Decision Memo* at 3. JSC Apatit requested in its case brief that Commerce correct its calculation of the CVD margin for JSC Apatit with respect to the following, *inter alia*: (1) mining rights for LTAR program; (2) natural gas for LTAR from

independent gas producers/suppliers; (3) the Vologda Region's Support of Industrial Development; and (4) loans pursuant to financing of accounts receivable under export contracts. Brief of Hogan Lovells US LLP, *Countervailing Duty Administrative Review on Phosphate Fertilizers from Russia: Resubmission of JSC Apatit Case Brief*, Case No. C-821-825 (2020-2021 Administrative Review) (Aug. 4, 2023) ("JSC Apatit's Br.") at 1-2.

19. JSC Apatit's case brief explained that, in the *Preliminary Results*, Commerce failed to calculate both its benchmarks and alleged benefit margins assigned to JSC Apatit based on the entire POR. Instead, Commerce unlawfully made its calculations on data comprising solely calendar year 2021, thereby failing to include JSC Apatit's December 2020 data. *Final Decision Memo* at 11; JSC Apatit's Br. at 2, 11-17.

20. JSC Apatit's case brief explained that, in the *Preliminary Results*, Commerce unlawfully countervailed certain mining licenses obtained by JSC Apatit prior to April 1, 2002, departing from the agency's longstanding practice of applying an April 1, 2002 cut-off date with alleged subsidies provided in Russia. *Final Decision Memo* at 17; JSC Apatit's Br. at 2, 4, 22-25.

21. JSC Apatit's case brief explained that, in the *Preliminary Results*, Commerce unlawfully found that JSC Apatit received a benefit from its mining licenses with respect to phosphate rock deposits in Russia by equating the GOR's mining licenses to the "provision of a good" and relying on Petitioner's flawed benchmark data. *Final Decision Memo* at 13, 25-26, 32-36; JSC Apatit's Br. at 2-8, 17-21, 26-42.

22. JSC Apatit's case brief explained that Commerce unlawfully relied on unreliable and artificially inflated data to calculate a "tier three" benchmark with respect to the alleged provision of mining rights for LTAR that are not consistent with market principles, as required by 19 C.F.R. § 351.511(a)(2)(iii), nor reflective of prevailing market conditions, as required by

7

19 U.S.C. § 1677(5)(E)(iv).  JSC Apatit further explained that Commerce unlawfully disregarded more accurate, complete data on the record (including the EuroStat and IFA data) without any explanation.  JSC Apatit's Br. at 29-32.

23. JSC Apatit's case brief explained that, in the *Preliminary Results*, Commerce should have used JSC Apatit's Gross Profit figure in its profit ratio calculation with respect to the alleged provision of mining rights for LTAR to calculate a margin as accurately as possible.  *Final Decision Memo* at 18-19; JSC Apatit's Br. at 7, 43-45.

24. In regards to the alleged natural gas for LTAR program, JSC Apatit explained in its case brief that, in the *Preliminary Results*, Commerce improperly punished JSC Apatit through the application of AFA to the GOR and should have excluded JSC Apatit's gas purchases from certain independent gas suppliers from the benefit calculations for this program.  *Final Decision Memo* at 49; JSC Apatit's Br. at 8-10.

25. JSC Apatit explained in its case brief that in the *Phosphate Fertilizers from Morocco AR1 Preliminary Results*, Commerce adopted an approach consistent with market principles in selecting its phosphate rock benchmark.  *Final Decision Memo* at 43; JSC Apatit's Br. at 41-42.  Accordingly, JSC Apatit requested that Commerce place its preliminary calculations and calculation memorandum for the *Phosphate Fertilizers from Morocco AR1 Preliminary Results* on the record of the current administrative review.  *Id.*

26. On August 4, 2023, Commerce extended the deadline for the *Final Results* until October 31, 2023.  *Final Results* at 1-2.

27. On September 21, 2023, ADM submitted a Notice of Subsequent Authority, providing Commerce with *The Mosaic Company v. United States*, Ct. No. 21-00116, Slip Op. 23-123 (Ct. Int'l Trade Sept. 14, 2023), which highlights Commerce's inconsistent approach

and methodologies between the *Phosphate Fertilizer from Morocco* and the *Phosphate Fertilizer from Russia* administrative reviews. *See* Letter from WilmerHale to U.S. Department of Commerce, *Phosphate Fertilizers from the Russian Federation: Request to Reject ADM's Notice of Subsequent Authority*, Case No. C-821-825 (2020-2021 Administrative Review) (Sept. 29, 2023) (referencing ADM's submission of a Notice of Subsequent Authority to provide Commerce with *The Mosaic Company v. United States*). On October 18, 2023, during its administrative review public hearing Commerce announced for the first time that ADM's Notice of Subsequent Authority had been rejected. Memorandum from William J. Horn to The File, *Countervailing Duty Administrative Review of Phosphate Fertilizers from the Russian Federation*: *Reject and Remove Barcode 4433639-01 from the Record*, Case No. C-821-825 (2020-2021 Administrative Review) (Oct. 18, 2023).

28. On November 6, 2023, Commerce published the *Final Results*.

29. Regarding the alleged natural gas for LTAR program, Commerce continued in the *Final Results* to apply AFA unlawfully in order to countervail JSC Apatit's purchases of natural gas from certain independent suppliers. *Final Decision Memo* at 50-51.

30. Regarding the alleged mining rights for LTAR program, Commerce continued unlawfully in the *Final Results* not to apply its April 1, 2002 cut-off date. *Id*. at 17-18. Commerce also continued unlawfully to find that the GOR's provision of mining rights constitutes a financial contribution in the form of a provision of a good. *Id.* at 14-15.

31. Commerce unlawfully determined in the *Final Results* to rely solely on GTA data for South Africa, Finland, and Brazil to calculate a mining rights benchmark based on market principles. *Id*. at 32-34. Specifically, Commerce unlawfully refused to use the GTT data for South Africa, to add Togo and Iran data, or to include EuroStat data. *Id.* at 29-40.

32. Commerce unlawfully determined in the *Final Results* not to employ weighted averages in the calculation of the mining rights benchmark. *Id*. at 26-28.

33. Commerce continued unlawfully to calculate JSC Apatit's alleged benefit for the mining rights program by employing Profit Before Tax, instead of Gross Profit. *Id*. at 19-23. Commerce also unlawfully excluded from the cost of production build up an additional fee paid to government authorities to maintain a mining license. *Id*. at 24.

34. Commerce unlawfully refused in the *Final Results* to include the calculation memorandum from the *Phosphate Fertilizers from Morocco AR1 Preliminary Results* on the record of the current administrative review. *Id*. at 44.

35. In the *Final Results*, Commerce failed to acknowledge the recent opinion in *The Mosaic Company v. United States*, Ct. No. 21-00116, Slip Op. 23-134 (Ct. Int'l Trade Sept. 14, 2023), which directly address the selection and calculation of a "tier three" benchmark for phosphate rock.

36. Finally, Commerce continued unlawfully in the *Final Results* to calculate JSC Apatit's CVD margin exclusively on the basis of calendar year 2021 data, not for the entire POR, thereby excluding record data for December 2020. *Id.* at 11-13.

37. Commerce assigned a final CVD rate of 28.50% to JSC Apatit in the *Final Results*.

**STATEMENT OF CLAIMS**

**COUNT ONE**

38.    Paragraphs 1 to 37 are adopted and incorporated herein by reference.

39.    Commerce has firmly established and consistently held that it is unable to identify and measure subsidies conferred in Russia prior to April 1, 2002 due to previously existing broad distortions in the Russian economy, and that Commerce thus is unable to countervail alleged subsidies received prior to that date. Commerce's decision in the *Final Results* not to apply the April 1, 2002 cut-off date when determining whether mining rights were provided to JSC Apatit in Russia for LTAR is not supported by substantial evidence on the record and is otherwise not in accordance with law.

**COUNT TWO**

40.    Paragraphs 1 to 39 are adopted and incorporated herein by reference.

41.    In calculating its "tier three" benchmark, in accordance with 19 C.F.R. § 351.511(a)(2)(iii), for the alleged mining rights for LTAR program, Commerce unlawfully relied in the *Final Results* solely on GTA data for South Africa. Commerce refused to include the GTT data for South Africa, notwithstanding that these data are significantly more consistent with market principles and reflective of prevailing market conditions. Commerce's determination not to include the South Africa GTT data in its mining rights benchmark is not supported by substantial evidence on the record and is otherwise not in accordance with law.

**COUNT THREE**

42.    Paragraphs 1 to 41 are adopted and incorporated herein by reference.

43.    Alternatively, with respect to the calculation of its "tier three" benchmark for the alleged mining rights for LTAR program, Commerce unlawfully failed in the *Final Results* to

employ additional phosphate rock pricing data from EuroStat and GTT to calculate its benchmark price.  Commerce's determination to exclude these pricing data is unsupported by substantial evidence on the record and is not in accordance with law.

### COUNT FOUR

44. Paragraphs 1 to 43 are adopted and incorporated herein by reference.

45. Regarding the alleged mining rights for LTAR program, Commerce's exclusion from the cost of production build-up in the *Final Results* of an additional fee that JSC Apatit paid to government authorities, as required to maintain a mining license in Russia, is not supported by substantial evidence on the record and is not in accordance with law, including the statutory benefit offset provisions set forth in 19 U.S.C. § 1677(6).

### COUNT FIVE

46. Paragraphs 1 to 45 are adopted and incorporated herein by reference.

47. Regarding the calculation in the *Final Results* of JSC Apatit's benefit from the alleged mining rights for LTAR program, Commerce unlawfully calculated JSC Apatit's profit ratio by dividing JSC Apatit's Profit Before Tax by its Cost of Sales.  Commerce's determination to rely on JSC Apatit's Profit Before Tax as the numerator in that calculation, as opposed to employing its Gross Profit figure, excluded significant additional expenses needed to adjust JSC Apatit's cost of production for an appropriate comparison to an export sales price benchmark.  Commerce's calculation of a profit ratio for JSC Apatit is not supported by substantial evidence on the record and is otherwise not in accordance with law.

### COUNT SIX

48. Paragraphs 1 to 47 are adopted and incorporated herein by reference.

49. Commerce's calculation in the *Final Results* of JSC Apatit's benchmark and program-specific benefit calculations unlawfully relied exclusively on calendar year 2021 data, notwithstanding that the POR also included December 2020. Commerce's failure to calculate JSC Apatit's benefit based on the entire POR is not supported by substantial evidence on the record and is otherwise not in accordance with law.

## COUNT SEVEN

50. Paragraphs 1 to 49 are adopted and incorporated herein by reference.

51. Commerce unlawfully refused to include on the administrative record and consider both ADM's Notice of Subsequent Authority regarding *The Mosaic Company v. United States*, Ct. No. 21-00116, Slip Op. 23-134 (Ct. Int'l Trade Sept. 14, 2023), and the calculation memorandum from the *Phosphate Fertilizers from Morocco AR1 Preliminary Results*. Commerce's refusals are not supported by substantial evidence and are otherwise not in accordance with law, including, *inter alia*, 19 U.S.C. § 1677m.

## COUNT EIGHT

52. Paragraphs 1 to 51 are adopted and incorporated herein by reference.

53. Commerce unlawfully determined that all of JSC Apatit's natural gas producers/suppliers are government authorities, in accordance with 19 U.S.C. § 1677(5)(B), due to the application of AFA to the GOR. Commerce's finding and its subsequent determination to countervail all of JSC Apatit's purchases of natural gas from its independent suppliers is not supported by substantial evidence on the record and is otherwise not in accordance with law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)  hold that the *Final Results* are unsupported by substantial evidence and otherwise not in accordance with law;

(b)  remand the *Final Results* to Commerce with instructions to issue a new determination and take other actions, as appropriate, consistent with this Court's decision; and

(c)  provide such other and further relief as this Court deems just and proper.

          Respectfully submitted,

          /s/ Jonathan T. Stoel
          H. Deen Kaplan
          Jonathan T. Stoel
          Jared R. Wessel
          Maria A. Arboleda
          Cayla D. Ebert

          HOGAN LOVELLS US LLP
          Columbia Square
          555 Thirteenth Street, N.W.
          Washington, DC 20004-1109
          (202) 637-6634
          jonathan.stoel@hoganlovells.com

          *Counsel to Joint Stock Company Apatit*

Date: January 3, 2024